UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEDA BAIG,<br><br>        Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI,<br><br>        Defendant. | Case No. 21-cv-01839-HSG<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 16, 17 |

Defendant Andrew Saul,[1] the former Commissioner of the Social Security Administration, acting in his official capacity, denied Plaintiff Neda Baig's application for disability insurance benefits under Title II of the Social Security Act. Dkt. No. 1. Plaintiff seeks judicial review of that decision. For the reasons detailed below, the Court **GRANTS** Plaintiff's motion for summary judgment, Dkt. No. 16, **DENIES** Defendant's cross motion for summary judgment, Dkt. No. 17, and remands this matter to the Social Security Administration for further proceedings.

**I.  BACKGROUND**

In June 2018, Plaintiff filed an application for disability insurance benefits, alleging a disability onset date of June 14, 2017. *See* Dkt. No. 11 ("AR") at 173.[2] Plaintiff listed as impairments chronic fatigue and immune dysfunction, fibromyalgia, depression, and anxiety. AR at 64–65. The Agency denied Plaintiff's application initially in August 2018, and on reconsideration in September 2018. *Id*. at 78, 92.

---

[1] The acting Commissioner of the Social Security Administration is Dr. Kilolo Kijakazi. She is substituted for her predecessor, Andrew Saul, as Defendant in this action under Fed. R. Civ. P. 25(d).

[2] Due to its size, the Administrative Record, filed as Dkt. No. 11, is broken into thirty-four parts. The Court refers to these documents collectively as the "AR," and cites to its internal pagination.

Plaintiff appeared before an Administrative Law Judge ("ALJ") in October 2019. *Id.* at 41–63. The ALJ followed the five-step sequential evaluation process mandated for disability claims under 20 C.F.R. § 404.1520(a) and ultimately found that Plaintiff was not disabled.[3] AR at 19–34. The ALJ accordingly denied Plaintiff's request for benefits. *Id.*

Step One requires the ALJ to determine whether the claimant is working in "substantial gainful activity," defined as work done for pay or profit and involving significant mental or physical activities. *See* 20 C.F.R. §§ 404.1520(b), 404.1572. At Step One, the ALJ found that Plaintiff did not engage in substantial gainful activity during the relevant period. AR at 22.

Step Two directs the ALJ to determine whether the claimant has a severe impairment or combination of impairments that significantly limit her ability to work. *See* 20 C.F.R. § 404.1520(c). Here, the ALJ found the claimant has the following severe combination of impairments: her status after Rocky Mountain spotted fever and Lyme disease in 2019, chronic fatigue syndrome ("CFS"), orthostatic tachycardia, benign paroxysmal positional vertigo, gastrointestinal disorder, pelvic floor dysfunction, depressive disorder, anxiety disorder, and an eating disorder. AR at 22. The ALJ found that Plaintiff had not established the existence of fibromyalgia as a medically determinable impairment because the record did not contain the examinations required to meet the applicable criteria. *Id.* at 23.

At Step Three, the ALJ determines whether the claimant's impairment, or combination of impairments, medically "meets or equals" an impairment listed in 20 C.F.R., pt. 404, subpt. P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. "That bureaucratic mouthful means the ALJ must see if the claimant's impairment matches the criteria for disabling conditions listed in the regulations." *Petrini v. Colvin*, No. 14-CV-01583-JD, 2015 WL 5071931, at *1 (N.D. Cal. Aug. 27, 2015), *aff'd sub nom. Petrini v. Berryhill*, 705 F. App'x 511 (9th Cir. 2017) (quotation omitted). At this step, the ALJ found that none of Plaintiff's impairments, considered singly and in combination, met or medically equaled the criteria of any listing. AR at 23.

---

[3] The ALJ determined Plaintiff remained insured through December 31, 2022, meaning Plaintiff must establish disability on or before that date. AR at 20.

At Step Four, if the claimant does not have a listed impairment, the ALJ assesses the claimant's residual functional capacity ("RFC") and ability to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f); *see also id.* § 404.1545. In considering the claimant's symptoms, the ALJ must first consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms. *See Id.* § 404.1529; Social Security Ruling 16-3p. The ALJ must consider all impairments, even those that are not severe. 20 C.F.R. § 404.1545(a)(2). Once the underlying impairment has been shown, the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. *See id.* § 404.1529.

Here, the ALJ determined that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), and found that Plaintiff is unable to perform her past relevant work as a nurse.[4] AR at 25–26, 32. Specifically, the ALJ found that Plaintiff is capable of performing sedentary work, except that she: (a) remains capable of understanding remembering, and completing no more than simple and detailed tasks, but not complex tasks; (b) remains capable of maintaining attention and concentration for no more than two-hour periods; and (c) is unable to perform production-paced work. *Id.* at 25–26. In reaching the RFC determination, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, but found that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record" for several reasons. *Id.* at 27. The ALJ also found the opinion of treating physician Dr. Hector Bonilla unpersuasive. *Id.* at 31–32.

Lastly, at Step Five the ALJ determines whether the claimant can adjust to other work based on the claimant's age, education, work experience, and RFC. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ found that Plaintiff could perform other work in the national

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

1  economy, including work as a document preparer, nut sorter, or bench hand.  AR at 33–34.  The

2  ALJ thus concluded that Plaintiff is not disabled under the Act.  *Id.* at 34.

3       The Appeals Council denied Plaintiff's request for review of the ALJ's decision in

4  December 2020, making the ALJ's decision final.  *Id.* at 5–7.  Plaintiff then filed this action in

5  under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

     The Court has jurisdiction to review final decisions of the Commissioner.  *See* 42 U.S.C. § 405(g) ("The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").  The Court may disturb the Commissioner's decision to deny benefits only if the decision is not supported by substantial evidence or is based on legal error.  *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).  The threshold for "substantial evidence" is not high: "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted).  "The evidence must be more than a mere scintilla, but may be less than a preponderance."  *Molina v. Astrue*, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (quotation omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

     The Court must consider the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).  The ALJ is responsible for making determinations of credibility and for resolving evidentiary ambiguities, including conflicting medical testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Additionally, the Court "may not reverse an ALJ's decision on account of an error that is harmless.  The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Molina*, 674 F.3d at 1111 (quotation omitted).

4

### III. DISCUSSION

Although the Court recognizes and applies the controlling deferential standard of review, it finds that the ALJ erred in several respects that require remand. First, the ALJ failed to consider limitations arising from Plaintiff's autonomic neuropathy and migraines/headaches. Second, the portions of the record cited by the ALJ in finding Plaintiff not to be credible did not amount to clear and convincing evidence given what the cited records actually say. And the ALJ relied on a rationale that the Ninth Circuit has prohibited in cases involving chronic fatigue syndrome. The Court thus will remand for further proceedings consistent with this order.

#### A. Step Two

Plaintiff first argues that the ALJ erred at Step Two in failing to include headaches and autonomic neuropathy as severe impairments. Dkt. No. 16 at 15–17. Defendant does not substantively disagree, but contends that the error was harmless because the ALJ discussed Plaintiff's migraines and autonomic neuropathy in subsequent steps. Dkt. No. 17 at 3; *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("Even assuming that the ALJ erred in neglecting to list the bursitis at Step 2, any error was harmless" because the ALJ "extensively discussed" bursitis at Step Four). However, the Court cannot find the error harmless because it is not clear that the ALJ included limitations arising from these impairments in the RFC.

Generally, "Step Two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). In general, Plaintiff bears the burden of providing reliable evidence to establish the existence of medically determinable impairments. *See* 20 C.F.R. § 404.1512(a). Plaintiff also bears the burden of showing that her impairment is severe, meaning that the symptoms affect her ability to "perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159–60 (9th Cir. 2001). The ALJ may find an impairment not severe "only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quotations omitted). Although an error at Step Two may be considered harmless where the ALJ moves to the next step in the analysis, "the decision must reflect that the ALJ considered any limitations posed by the impairment" at subsequent steps. *See, e.g.*, *Tadesse v.*

*Kijakazi*, No. 20-16064, 2021 WL 5600149, at *1 (9th Cir. Nov. 30, 2021);[5] *M.F. v. Kijakazi*, 2021 WL 5407489, at *6 (N.D. Cal. Nov. 18, 2021) ("While the ALJ mentioned [plaintiff's] PTSD twice, the ALJ did not discuss in any way what limitations arose from [plaintiff's] PTSD and how those limitations were factored into the RFC analysis.").

Here, the ALJ's failure to include autonomic neuropathy at Step Two appears to be based on a simple misreading of Plaintiff's medical records. In assessing the RFC, the ALJ stated that Plaintiff's neurological tests were notable for orthostatic tachycardia, "but no orthostasis hypertension suggestive of autonomic neuropathy." AR at 27, 31. The cited record states the opposite: in August 2019, Dr. Srikanth Muppidi listed several findings and wrote "[t]hese features are suggestive of autonomic neuropathy." AR at 2388; *see also id.* at 2361 ("Autonomic testing done a month ago, positive for autonomic neuropathy"), 2368 ("With new diagnosis of autonomic neuropathy . . . ."), 2681 ("Her results suggest autonomic neuropathy and GI doctor is referring her to autonomic clinic for f/u."), 2688 ("She has autonomic neuropathy and will see autonomic dysfunction clinic per pt, GI is referring her."). This statement was the ALJ's only mention of autonomic neuropathy, so the Court cannot determine whether the ALJ actually considered it in determining the RFC, or even whether the positive test result would have affected the ALJ's other findings.

Regarding headaches, the ALJ acknowledged that Plaintiff had "consistently been diagnosed with tension headaches or non-intractable migraines."[6] *Id.* at 29. But there is no indication that the ALJ ultimately incorporated limitations arising from headaches into the RFC. In that context, the ALJ stated only that Plaintiff "specifically denied" having headaches "on some occasions." *Id.* at 28. It is unclear to the Court how most of the ALJ's cited records support this proposition. For example, the ALJ cited to a record from June 2018 where Dr. Harpreet Singh notes that Plaintiff reported "generalized, constant [headaches] . . . getting worse in intensity and

---

[5] *Tadesse* and the other unpublished Ninth Circuit decisions cited in this order are not precedent, but may be considered for their persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

[6] The ALJ recounted Plaintiff's hearing testimony that she had migraines on most days that shut her down three to four times per week, AR at 27, but ultimately found Plaintiff not credible.

frequency" at least fifteen times per month lasting more than four hours per day. *Id.* at 782–83. Similarly, in October 2018, Dr. Nada A. Hindiyeh diagnosed Plaintiff with "chronic migraine without aura," and stated that Plaintiff reported that she "[t]ypically has 8 headache free days a month" and that headaches have a "significant impact on [Plaintiff's] life." *Id.* at 1379–80, 1384. Regardless, in light of the overall record, failure to report headaches at every one of Plaintiff's numerous appointments is not a sufficient reason for excluding them entirely from the RFC.[7] *See Smolen*, 80 F.3d at 1290 (proving severity at Step Two only requires showing that the impairment constitutes more than a "slight abnormality" that has "no more than a minimal effect" on the plaintiff's ability to do work). Plaintiff's treatment notes reflect that she reported consistent, frequent, and worsening headaches that were not adequately addressed on a number of occasions, despite variation in the *type* of headache and some periods of improvement.[8] For example, the records make clear that although Botox temporarily helped, Plaintiff stopped because she reported experiencing a side effect. AR at 1380.

Because the ALJ does not appear to have incorporated headaches/migraines or autonomic neuropathy into the RFC, the Court cannot find that the error was harmless. The Court notes, in particular, that Plaintiff's treating physician opined she would miss at least four days of work per month, and the vocational expert stated that an individual with that absence rate would not be able to sustain any work. AR at 287–89 (noting "absence rate too high for all work even if unskilled"); *see Christine L. v. Saul*, 450 F. Supp. 3d 1091, 1102 (D. Or. 2020) (finding plaintiff's migraine headaches were not effectively controlled because they would have caused her to miss work at least twice per month, "exceed[ing] an employer's customary tolerance for absences"); *Margaret M. v. Comm'r, Soc. Sec. Admin.*, No. 6:20-CV-00799-MK, 2021 WL 2853654, at *3 (D. Or. July

---

[7] For example, the ALJ cited a routine annual gynecological exam at which Plaintiff did not report changes in headaches. AR at 354.

[8] *See* AR at 2709–10 (October 2019; reporting migraines almost every night), 2366, 2695–96 (September 2019; "She feels like her headaches are worse"), 2666–67 (August 2019; reporting headaches most days), 2348 (July 2019), 2190–91, 2164–65 (May 2019; "She is on ajovy for migraines and wants to know what to do about tension headaches"), 1804 (March 2019), 1687 (January 2019), 1379–83 (October 2018; noting eight headache-free days monthly), 430, 442, 451, 791 (March 2018), 1242 (July 2017), 1233 (May 2017; noting migraines had improved but Plaintiff was suffering from tensional headaches).

7

8, 2021) (finding failure to include migraines at Step Two was harmful error where the record reflected that migraines "more than met the minimal requirements" for Step Two and the only discussion of them was a summary of plaintiff's hearing testimony).

### B. RFC Finding

Plaintiff next argues that the ALJ erred in assessing Plaintiff's RFC by disregarding the treating evidence provided by Plaintiff's physicians and by finding Plaintiff's testimony not credible. Dkt. 16 at 17–24. The Court finds that the ALJ's basis for rejecting Plaintiff's testimony and medical opinions incorporated several errors that the Court cannot find harmless. The ALJ appears to have misread portions of the record or taken them out of context to reach her conclusion as to the credibility of Plaintiff and her treating physician. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Moreover, the ALJ's reasoning "runs counter to the [CDC's] published framework for evaluating and diagnosing CFS." *See Lee v. Kijakazi*, 2023 WL 2751985, at *4 (E.D. Cal. Mar. 31, 2023) (quoting *Reddick*, 157 F.3d at 726).

#### i. Plaintiff's Subjective Complaints

Where, as here, an ALJ does not find that a claimant is malingering and determines the claimant "has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."[9] *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015). To satisfy the "clear and convincing reasons" requirement, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* at 493 (quoting *Reddick*, 157 F.3d at 722).

The ALJ described Plaintiff's hearing testimony as follows. *See* AR at 26–27. Plaintiff picks up shifts as per diem nurse when she can, a few times per month. She is able to sit for fifteen to twenty minutes before increased pain forces her to lie down. After sitting or standing,

---

[9] To preserve its position for any potential appeal, Defendant argues the "clear and convincing reasons" standard is inconsistent with the substantial evidence standard under 42 U.S.C. § 405(g). *See* Dkt. No. 17 at 12 n.6. As Defendant notes, this Court is bound by Ninth Circuit precedent.

8

she usually must lie down for thirty to forty-five minutes, and she can lift less than five pounds. She has migraines that shut her down three to four times per week and take four to five hours to pass on average. Plaintiff experiences "brain fog" that sometimes makes her unable to follow a 30-minute show without rewinding. She is able to drive about fifteen minutes to her medical appointments four to five times per week, but if she is not feeling well, her father drives. Plaintiff is unable to shower or wash her hair, and her family members perform the household chores.

The ALJ gave several reasons for discrediting Plaintiff's testimony. Reviewing the medical records, the ALJ found "inconsistent and largely normal findings" and concluded that Plaintiff "did not report to providers the same level of disabling symptoms she testified to during the hearing and generally alleges." *Id.* at 28. The ALJ added that "the claimant even specifically denied experiencing any fatigue or headaches or any constitutional, cognitive, or psychiatric symptoms" on some occasions. *Id.* The ALJ found that Plaintiff's diagnoses and conservative treatment were not consistent with disabling symptoms, remarking that the record was "devoid of required hospitalization or other intensive or inpatient treatment for her physical complaints[.]" *Id.* at 29. The ALJ noted that "on some occasions," Plaintiff reported symptoms improved with treatment and that they were "mostly controlled" with medication. *Id.* at 28, 29. Further, the ALJ reasoned that Plaintiff and her husband acknowledged significant daily activities. *Id.* at 28. Last, the ALJ relied on administrative findings of state agency medical consultants. *Id.* at 29.

However, many of the ALJ's reasons are not supported by—or are even contradicted by— the cited portions of the record. A careful review of the ALJ's citations shows that statements by treating physicians were taken out of context or misread. At times, it was difficult for the Court to glean what portion of the record the ALJ relied on given the mismatch between the ALJ's statements and the records themselves. For example:

- The ALJ appears to rely on a record from December 2017 for the proposition that Plaintiff's symptoms had improved, but that record states "[*until*] her fatigue has measurably improved, [the doctor] recommended that patient refrain from any strenuous activities, both physical and cognitive." AR at 1195.[10]

---

[10] The Court acknowledges that there is a typo in this note that may have led to confusion, but in context, it is clear that this record was *not* documenting "measurable improvement."

9

- The ALJ cites a record from June 2018, perhaps because it states that "stretching and medications" helped with pain. *Id.* at 782. But this same record explains that medications that initially helped were no longer effective and repeatedly notes that symptoms were "getting worse in intensity and frequency." *Id.* Among other symptoms, Dr. Singh documents pain exacerbated by sitting and standing, generalized and constant headaches at least fifteen times per month, major depression, and extreme fatigue. *Id.* Dr. Singh concludes that Plaintiff suffered "chronic fibromyalgia with frequent and intense flare ups," and that her "chronic fatigue syndrome has proven to be extremely debilitating." *Id.* at 783.

- The ALJ repeatedly cites a record from July 2017 by Dr. Kourosh Yamouti.[11] *Id.* at 806–07. The note states only that Plaintiff's mood had "somewhat" improved and her fatigue had "slightly" improved. Dr. Yamouti states that Plaintiff was not getting out of the house to go grocery shopping but had been able to visit her family and do mild walking exercises. *Id.* The note states "she continues to have the same amount of pain." *Id.* This record does not clearly and convincingly contradict any identified part of Plaintiff's testimony. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person . . . makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

- The ALJ cites to a record from May 2017, perhaps relying on a chart where the doctor marked "no" to "new headaches" or "impaired memory or concentration." *Id.* at 1233. That same note documents Plaintiff's reports of relentless fatigue, pain, headaches, and other symptoms, as well as crashing three to four days in bed after working. *Id.* at 1232. At this visit, Dr. Hector Bonilla determined Plaintiff had chronic fatigue that interfered with her personal life, pain in her lower extremities, brain fog, unrefreshing sleep, and that she met the criteria for CFS. *Id.* at 1236.

- The ALJ repeatedly cites to a progress note by Dr. Hindiyeh in October 2018, perhaps because it notes that Botox "was helpful." *Id.* at 1381, 1482. But on the previous page, Dr. Hindiyeh explains that Plaintiff stopped Botox because of a side effect and states she typically had eight headache-free days per month, with headaches lasting two to three hours and having a "significant impact on her life." *Id.* at 1380. The note lists six different headache medications, most of which were "no clear help" or made "no difference." *Id.* at 1380–81.

- The ALJ cited a record from March 2019 with Dr. Ayala Estela Del Carmen for chronic cough. *Id.* at 1804. It is unclear to the Court what portion of this record the ALJ relied on. It states that recent blood tests had come back positive for cocci IgM and rocky mountain spotted fever, and documents as symptoms: "Exhausted or fatigued. Frequent headaches. Neck Pains. Dizziness. Dental Problems.

---

[11] The ALJ cites an exact copy of this treatment note three additional times, all from the same date of service. AR at 995, 998, 1001.

10

> Congested nose. Sore throat. Racing Heart. Constipation. Bloated stomach. Limb weakness. Swollen joints. Back pain. Lack of memory." *Id.*

- The ALJ relied on several appointments where one would not expect a patient to report distinct physical symptoms. For example, the ALJ cited to a *routine annual gynecological* exam from August 2017. *Id.* at 354; *see also id.* at 1615 (gastroenterology appointment), 1835, 2501, 2983 (appointments at Heart Associates of Northern California for rapid heartbeat).

These records do not support the ALJ's finding that Plaintiff failed to consistently report disabling symptoms to her doctors or that her symptoms were controlled with conservative treatment. To the contrary, Plaintiff's records show that she reported that certain treatments helped but stopped working, and that her providers struggled to find an effective approach to her pain, fatigue, and headaches. *See, e.g.*, *id.* at 326 (note from March 2018 by Dr. Irina Vladimirovna stating that Plaintiff was being transferred because former doctor "doesn't know what else to do"); *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("[It] is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). And viewing the records as a whole, as the ALJ must, Plaintiff's failure to report *each* symptom at *each* of her dozens of appointments does not reasonably undermine her testimony. *Trevizo v. Berryhill*, 862 F.3d 987, 1002 (9th Cir. 2017) ("The ALJ found [plaintiff's] claims of fatigue to be contradicted by the treatment notes because the notes 'generally show denials of fatigue.' Yet it is not inconsistent with disability that [plaintiff] was not entirely incapacitated by fatigue at all times, and the treatment notes reflect that plaintiff reported weakness or fatigue at more than half of her appointments[.]" (internal citation omitted)). In short, while the ALJ, not this Court, is charged with determining credibility, the cited portions of the record do not establish the inconsistency the ALJ cited as the basis for finding Plaintiff to be not credible.

Further, much of the ALJ's reasoning does "not fully account for the nature of CFS and its symptoms." *Reddick*, 157 F.3d at 723; *see also Lee*, 2023 WL 2751985, at *4 (in CFS case, rejecting the ALJ's reasoning that laboratory findings, conservative treatment, and daily activities were inconsistent with total disability). It is difficult for the Court to assess to what extent the ALJ considered the effect of *fatigue* on Plaintiff's "ability to undertake sustained work activity" given

11

the ALJ's focus on Plaintiff's mental status and physical examinations. *See Reddick*, 157 F.3d at 724–25 ("The ALJ's finding on [RFC] was not supported by substantial evidence as it failed to account for the effects of fatigue on Claimant's ability to function in the workplace.").[12]

Specifically, the ALJ cited "inconsistent and largely normal" diagnostic findings. AR at 28. But "a general litany of negative lab tests does not undermine plaintiff's CFS allegations, since '[t]here is no blood test or other objective laboratory test for chronic fatigue syndrome.'" *Lee*, 2023 WL 2751985, at *4 (quoting *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 677 (9th Cir. 2011)); *see also Daniel D. v. Comm'r, Soc. Sec. Admin.*, No. 3:18-CV-00654-HZ, 2019 WL 4467631, at *8 (D. Or. Sept. 17, 2019) ("In light of the signs and symptoms of [CFS] described above, the Court finds that lack of support from the objective evidence is not a clear or convincing reason for discounting Plaintiff's subjective symptom testimony.").[13]

The ALJ also took issue with Plaintiff's conservative treatment, but did not point to any medical opinion on "what sort of treatment *should* be expected for a totally disabled individual suffering from Plaintiff's impairments, suggesting that the ALJ impermissibly relied on her own, lay medical opinion." *Schultz v. Colvin*, 32 F. Supp. 3d 1047, 1060 (N.D. Cal. 2014). For example, there is no basis cited in support of the ALJ's suggestion that Plaintiff would need to have been hospitalized or admitted to inpatient care. *See* AR at 29. To the extent they address the issue, the medical records suggest the opposite: a progress note from April 2018 by Dr. Melicent Clare Peck states "[t]here [a]re no standardized effective therapies to treat CFS/ME at this time." AR at 335; *cf. Reddick*, 157 F.3d at 727 ("The ALJ's focus on pain medication and treatment is

---

[12] Citing *Cohen v. Secretary of Dept. of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992) ("Although her mental capacity perhaps would have been more than adequate, Cohen simply would have lacked the stamina for such employment."); *Rose v. Shalala*, 34 F.3d 13, 17 (1st Cir. 1994) ("The question here is the extent to which claimant's fatigue in fact restricts his residual functional capacity."); *Williams v. Shalala*, No. 94-CV-426S, 1995 WL 328487, at *6 (W.D.N.Y May 19, 1995) (holding that, where the ALJ failed to consider claimant's non-exertional limitations, the "ALJ's decision, on the whole, reflect[ed] an analysis inconsistent with the appropriate framework for assessing disability claims premised on CFS.").

[13] Moreover, Plaintiff tested positive for Lyme disease, rocky mountain spotted fever, H-pylori, autonomic neuropathy, pelvic floor disfunction, and orthostatic tachycardia. AR at 884, 807, 1829, 2353, 2515.

misplaced, as the CDC has made it clear that no definitive treatment for CFS exists."). Since "[a] claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist," this was error. *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010); *see also Daniel D.*, 2019 WL 4467631, at *7 (lack of aggressive treatment "does not reasonably cast doubt" on testimony regarding the severity of CFS).

The ALJ also reasoned that Plaintiff was able to perform "significant daily activities," including driving, paying bills, counting change, and handling accounts, planning a wedding and traveling to Hawaii in early 2018, and renewing her nursing license. AR at 28. Daily activity may be grounds for an adverse credibility finding only if it meets the threshold for transferable work skills or contradicts Plaintiff's testimony. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Activities such as "[h]ouse chores, cooking simple meals, self-grooming, paying bills, writing checks, and caring for a cat in one's own home, as well as occasional shopping outside the home, are not similar to typical work responsibilities." *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017). Further, the Ninth Circuit has held that activities of daily living that are "sporadic and punctuated by rest" do not contradict allegations of severe CFS symptoms, since CFS is "characterized by periods of exacerbation and remission." *Reddick*, 157 F.3d at 722.

Again, the ALJ's citations supporting daily activity omitted significant context and as framed are not inherently inconsistent with a specific identified part of Plaintiff's testimony:

- The ALJ cited to Plaintiff's husband's statement that she could manage money. But he also wrote that she "can barely get out of bed everyday because of chronic pain, fatigue, and anxiety . . . . prevent[ing] her from being able to work on a consistent basis" and that Plaintiff "uses what energy she does have to get to doctor's appointments" and was barely able to care for personal hygiene. AR at 236–43. To the extent the ALJ credited portions of his statements but not others, it is unclear why. *See Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2017) ("A germane explanation is required to reject lay witness testimony . . . .").[14]

- Regarding wedding planning and travel, the ALJ relied on a treatment note that states: "[Plaintiff] got married June 2[0]18. Planning her wedding was very

---

[14] The Court acknowledges that it is unclear whether, after 2017 changes to the regulations, ALJs are still required to provide a "germane explanation" for rejecting lay witness testimony. *See Weitman v. Kijakazi*, No. 21-35748, 2022 WL 17175060, at *2 n.4 (9th Cir. Nov. 23, 2022) (declining to reach the question of whether the "germane reasons" standard should be discarded).

13

stressful and went to honeymoon to Hawaii." AR at 1373.  But a treatment note contemporaneous to the wedding planning states: "Crashes: 2x week and takes 2–3 days to recover (she will get married in June), the wedding planning makes her more tired." *Id.* at 346.  Given that context and without an explanation from the ALJ, it is unclear which part of Plaintiff's testimony this activity may conflict with. *See Reddick*, 157 F.3d at 722 (activities that are "sporadic and punctuated by rest" do not contradict allegations of severe CFS symptoms).

- Plaintiff explained that renewing her nursing license required only twenty online hours over two years, after which she submitted certificates and paid a fee. *Id.* at 48–49.  Without some explanation, this is not an activity that contradicts any identified part of Plaintiff's testimony.

In sum, the ALJ did not satisfy the *Brown-Hunter* requirements in finding Plaintiff's testimony not credible, and that error was not harmless.  The Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Molina*, 674 F.3d at 1115.  Some of the remaining reasons cited by the ALJ (including Plaintiff's per diem shifts as a nurse and the prior administrative findings of state agency non-examining consultants) could be permissible to consider in evaluating credibility.  And Defendant is correct that courts *may* uphold an ALJ's credibility determination where the remaining reasons alone constitute clear and convincing evidence.  *See, e.g.*, *Beltran v. Berryhill*, No. 17-CV-06674-NC, 2019 WL 201515, at *7 (N.D. Cal. Jan. 15, 2019) (citing *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162–63 (9th Cir. 2008)).  However, the Court finds that approach is not appropriate here given the several overlapping errors and the fact that the case must be remanded for a reassessment of Step Two regardless.

In this case, the Court cannot, based on the record as a whole, "confidently conclude that the ALJ would have reached the same result" absent the above errors.  *See Smith v. Berryhill*, No. C18-0144 RSL, 2018 WL 4873570, at *7 (W.D. Wash. Oct. 9, 2018) (finding two out of three reasons for discrediting plaintiff insufficient and noting that the court could not confidently conclude that the ALJ would have discredited plaintiff had the ALJ correctly analyzed the evidence and the first two reasons).  Given the ALJ's error at Step Two, unsupported interpretations of parts of the record, and failure to apply the relevant framework for chronic fatigue syndrome, this is not a case where the remaining reasons should be examined in a silo because the ALJ's evaluation of the remaining evidence may have been affected.  Whether the

remaining reasons are enough on their own to discredit Plaintiff should be up to the ALJ in the first instance here. *Gerber v. Astrue*, No. SACV 09-0983 PJW, 2010 WL 3581965, at *4 (C.D. Cal. Sept. 9, 2010) (finding three out of four of the ALJ's reasons for discrediting plaintiff insufficient and remanding because "[o]nly she can determine whether she would have discounted Plaintiff's testimony for this reason alone").

And because this case will be remanded to reassess Step Two (and thus the RFC) regardless, the best course is for the ALJ to address the errors made in evaluating Plaintiff's credibility, then reconsider that issue. *See, e.g.*, *Emily B. v. Kijakazi*, No. 4:20-CV-05174-SMJ, 2022 WL 17224299, at *5 (E.D. Wash. Sept. 14, 2022) ("Given the errors discussed above and the fact that this claim is being remanded for further consideration of the medical evidence, the ALJ shall also reassess Plaintiff's subjective complaints in light of the record as a whole."); *Smith v. Astrue*, No. CIV S-10-1985 EFB, 2012 WL 1131435, at *8 (E.D. Cal. Mar. 30, 2012) (finding that because the case was being remanded for other reasons, errors in the ALJ's credibility finding should be addressed too).

On remand, the ALJ's analysis must be consistent "with the appropriate framework for assessing disability claims premised on CFS" as required by Ninth Circuit precedent. *See Reddick*, 157 F.3d at 724 (quoting *Williams*, 1995 WL 328487, at *6).

### ii. Treating Physician Evidence

Although Defendant is correct that the ALJ was not required to give greater weight to the opinion of Dr. Hector Bonilla,[15] the Court finds that the ALJ's basis for disregarding his opinion was not supported by substantial evidence for many of the reasons already discussed.

---

[15] For claims filed on or after March 27, 2017, like the one here, an ALJ will no longer "defer or give any specific evidentiary weight . . . to any medical opinion(s)" including those from treating physicians. 20 C.F.R. § 416.920c(a); *see* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867–68 (Jan. 18, 2017). The Ninth Circuit has confirmed that these changes to the SSA's regulations "displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) (quotations omitted). "For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies." *Id.*

15

"Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). In reviewing medical opinions, an ALJ must "articulate . . . how persuasive" it finds "all of the medical opinions" based on several factors. 20 C.F.R. § 404.1520c(b). The ALJ must address the two most important factors: supportability and consistency. *Id*. Supportability is "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency is "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). An ALJ may, but is not required to, explain how other factors were considered, including the source's relationship with the claimant, the length and purpose of the treatment relationship, the frequency of examinations, and the source's specialization. 20 C.F.R. § 404.1520c(b)(2), (c).

The ALJ found Dr. Bonilla's medical opinion unpersuasive in part because "it appears to be overly reliant on the claimant's subjective complaints." AR at 32. But the Ninth Circuit has said that this cannot be the rationale for finding evidence not credible when a plaintiff asserts disability based on CFS, because it "runs counter to the CDC's published framework for evaluating and diagnosing CFS." *Reddick*, 157 F.3d at 726 (citing definition of CFS in CDC report as "*self-reported* persistent or relapsing fatigue lasting six or more consecutive months") (emphasis in original).[16] Diagnosing CFS is thus, by nature, more heavily reliant on self-reported symptoms. And the ALJ's remaining reasons largely overlap with those relied on to discredit Plaintiff. For example, the ALJ stated that Dr. Bonilla's opinion was contradicted by Plaintiff's "specific denial" of symptoms in "several places" in the record, "normal" examinations, and daily activities. AR at 32. This evidence was not a sufficient basis for an adverse credibility finding for the reasons already discussed. And once again, given that the case must be remanded for the ALJ

---

[16] Although *Reddick* was decided prior to the change in the rules about weighing medical opinions, nothing about the new rules undermines this reasoning for why reliance on subjective complaints cannot constitute substantial evidence in the context of CFS.

to reassess at Step Two, the ALJ should also screen out the errors underlying the medical opinion finding.

In sum, the ALJ erred in determining the RFC, and the Court is not able to conclude that the ALJ would have reached the same result absent these errors. *See Molina*, 674 F.3d at 1115. The Ninth Circuit has recognized that CFS cases are "difficult to adjudicate," *Reddick*, 157 F.3d at 723, but nonetheless has imposed the requirements described in this order. Those cases "do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). But the ALJ is required to follow the directions the Ninth Circuit has set out in chronic fatigue syndrome cases as summarized above, and the ALJ's conclusions must be adequately supported by the relied-upon portions of the record when viewed in context.

## IV. RELIEF

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). A court may, in its discretion, grant a direct award of benefits when certain conditions are met. *Id.* To order that rare remedy, the Court must conclude that (1) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence"; (2) "the record has been fully developed and further administrative proceedings would serve no useful purpose"; and (3) if the "evidence were credited as true, the ALJ would be required to find the claimant disabled." *Garrison*, 759 F.3d at 495.

Here, although the Court finds that the ALJ erred at Step Two and failed to give legally sufficient reasons for rejecting Plaintiff's testimony and treating physician opinion, it cannot conclude that "further administrative proceedings would serve no useful purpose." *Brown-Hunter*, 806 F.3d at 495 (quoting *Garrison*, 759 F.3d at 1020). The record "raises crucial questions" about the extent to which Plaintiff's pain, fatigue, headaches, and accompanying symptoms render her disabled. *Leon*, 880 F.3d at 1045. Accordingly, the Court remands to allow for proper consideration of the evidence of record and for any additional investigation. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner

17

of Social Security, with or without remanding the case for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted).

## V. CONCLUSION

The Court **GRANTS** Plaintiff's motion for summary judgment, Dkt. No. 16, and **DENIES** Defendant's motion for summary judgment, Dkt. No. 17. The Court **REMANDS** this case to the Social Security Administration for further proceedings on an open record consistent with this order. The Clerk is directed to enter judgment in favor of Plaintiff and close the case.

**IT IS SO ORDERED.**

Dated: May 26, 2023

HAYWOOD S. GILLIAM, JR.
United States District Judge